CAGE BROTHERS et al., Appellants,

v.

Joe B. CAGE et al., Appellees.

No. 14266.

Court of Civil Appeals of Texas.

San Antonio.

July 22, 1964.

Rehearing Denied Sept. 9, 1964.

House, Mercer, House & Brock, San Antonio, for appellants.

Foster, Lewis, Langley & Onion, Pat H. Gardner, San Antonio, for appellees.

BARROW, Justice.

Joe B. Cage, d/b/a Cage Construction Company, brought this suit against Cage Brothers, a partnership composed of the Estate of Tom C. Cage, Deceased, William N. Allan and Wilson J. Seldon, and San Pedro Equipment Company, to recover on an implied contract for rental of construction equipment owned by Cage Construction Co., for damages for conversion of a D-8 bulldozer, and for title to a No. 14 maintainer. Cage Brothers and San Pedro Equipment Co. filed a cross-action against Joe B. Cage and joined as cross-defendant John A. Demauri, superintendent of Cage Construction Co., wherein Cage Brothers sought an accounting from Cage Construction Co. San Pedro Equipment Co. was a corporation owned by the partners of Cage Bros. to purchase and hold its construction equipment. It was asserted by the cross-action that San Pedro Equipment Co. had purchased the bulldozer and maintainer from Holt Equipment Co., and it sought possession and the rental value of the maintainer.

After a jury trial,[1] judgment was rendered whereby Joe B. Cage recovered from Cage Bros. the sum of $8,783.76, being the rental value of his equipment used by Cage

I. JURY VERDICT:

1. At the time work commenced on the Aransas-Refugio County Job, it had been agreed by Joe B. Cage and Cage Brothers to be a Cage Brothers' job.

2. Tom C. Cage told Joe B. Cage to put his equipment on the job.

3. At the time Joe B. Cage furnished his equipment for use on the Aransas-Refugio job, Joe B. Cage expected to be compensated by Cage Brothers for the use of such equipment.

4. At the time Joe B. Cage furnished his equipment on the job Tom C. Cage knew, or reasonably should have known, that Joe B. Cage expected to be compensated for the use of such equipment.

5. The reasonable rental value of Joe B. Cage's equipment used on the job was $89,726.00.

6. Joe B. Cage and Joe Crowe agreed, at or before the time the No. 14 maintainer and the D-8 bulldozer were delivered to Joe B. Cage by Holt Equipment Co. that Joe B. Cage would have the option to purchase the same.

7. Joe Crowe was authorized to enter into that agreement on behalf of Holt Equipment Company.

8. Said agreement was still in effect immediately prior to the transaction between Holt Equipment Co. and San Pedro Equipment Co. on May 15, 1961.

9. Holt Equipment Co. and San Pedro Equipment Co. agreed on May 15, 1961, that San Pedro Equipment Co. would succeed to all of the rights of Joe B. Cage under the contracts between Holt Equipment Co. and Joe B. Cage relating to the D-8 bulldozer and the No. 14 maintainer.

10. At the time William Allan requested Joe B. Cage to let C. Montgomery use the D-8 bulldozer, Cage Bros. intended to take such D-8 bulldozer for its own use and benefit.

11. The reasonable market value of the D-8 bulldozer on Feb. 7, 1961, was $28,000.00.

12. The reasonable rental value of the D-8 bulldozer from Feb. 7, 1961, to the present date is $25,400.00.

13. The decline in value, by reason of depreciation, of the D-8 bulldozer from Feb. 7, 1961, is $17,980.00.

14. The reasonable rental value of the Caterpillar No. 14 motor grader from May 15, 1961, to date is $14,700.00.

Bros., less a set-off due Cage Bros. on its accounting claim. Joe B. Cage was further granted judgment against Cage Bros. and San Pedro Equipment Co., jointly and severally, for $19,789.84, being the market value of the bulldozer on February 7, 1961, with interest from that date to date of judgment, less a set-off for the sums paid or obligated by San Pedro Equipment Co. to Holt on these machines. Joe B. Cage recovered title and right of possession to the maintainer. San Pedro Equipment Co. was awarded title and right of possession to the bulldozer. Cage Bros., San Pedro Equipment Co. and Joe B. Cage have appealed from this judgment.

Cage Construction Co. and Cage Bros. were both primarily in the road construction business. Joe B. Cage was a nephew of Tom C. Cage, senior partner of Cage Bros., and operated as an "affiliated operator" under Cage Bros. Under this arrangement, an affiliated operator (there were six associated with Cage Bros.) secured permission from Cage Bros. to bid on a construction job. The affiliated operator prepared a worksheet to arrive at an estimate of cost of the job. This worksheet was examined by Cage Bros. and if approved by them, the bid, as prepared or adjusted, was submitted to the bidding authority in the name of Cage Bros. If the bid was awarded, the affiliated operator was designated by Cage Bros. as the area superintendent and his company performed the work as employees of Cage Bros. On some jobs, Cage Bros. did all the preliminary work on the bid and requested the operator to do all or a part of the work as employees of Cage Bros. Cage Bros. furnished the money and handled the payroll, equipment payments, purchased the materials, and supplied the bond required by the State. All bookkeeping was done by Cage Bros. At the conclusion of the job, Cage Bros. received 5% of the gross price and credited the affiliated operator's account with the remaining profit or loss on the job.

This arrangement, although very informal and predicated largely upon a personal relationship between the affiliated operators and Tom C. Cage, worked to the mutual satisfaction of all, and Joe B. Cage operated as an affiliated operator from 1954 until November 20, 1961. Tom C. Cage died on November 10, 1961, and shortly thereafter a controversy arose between Joe B. Cage and the surviving partners of Cage Bros., which led to this suit.

This appeal relates primarily to the provisions of the judgment relative to the D-8 bulldozer and No. 14 maintainer. The informal arrangement between Cage Bros. and the affiliated operators for the purchase, payment and use of the heavy construction equipment created problems of ownership and rights incident thereto. When an affiliated operator needed a piece of equipment, he first secured approval of the purchase by Cage Bros. It was then ordered by the operator, but the payments were made by Cage Bros., and either charged to a particular job then being performed by the affiliated operator or to his drawing account. Cage Bros. frequently shifted its own equipment, as well as that of the affiliated operators, from job to job in order to utilize the best use of equipment and avoid unnecessary duplication of equipment among Cage Bros. and the affiliated operators. Where equipment was shifted, Cage Bros. would charge or credit the individual operators for rent of this loaned equipment.

On August 31, 1959, Joe B. Cage secured the bulldozer and maintainer in controversy from Holt Equipment Co. A printed form titled "Purchaser's Order," which is in the form of a purchase and sell agreement, was executed by Holt and Joe B. Cage for each machine. These agreements provided for purchase of the bulldozer for $39,955.00 by payment of $2,000.00 on delivery, and of the maintainer for $24,929.00 by payment of $1,150.00 on delivery. On each form was inserted the provision: "Guar. 6 mos. rentals at $2000 ($1150 on the maintainer) /mo. 1st payment due at date of delivery. Usual Cage Bros. interest to apply."

In accordance with the customary practice of purchase by Cage Brothers' affiliated

operators, Holt billed Cage Bros. each month for the payments and they were timely paid on behalf of Joe B. Cage through February, 1961, and charged to his account. No further payments were made, and on May 15, 1961, San Pedro Equipment Co., without the knowledge of Joe B. Cage, paid, or obligated itself to pay, the balance due on these two machines and received a bill of sale to each from Holt. Joe B. Cage did not learn of this transaction until November 20, 1961.

The maintainer remained in the custody of Joe B. Cage and no demand was made for it by San Pedro Equipment Co., Cage Bros. or Holt. On February 7, 1961, Cage Bros. shifted the bulldozer, which was not then needed by Joe B. Cage, to Galveston, where Mr. Montgomery, another affiliated operator, was performing a job and needed a bulldozer. Monthly rental on the machine was charged against Mr. Montgomery's account, but was not credited to Joe B. Cage. When Joe B. Cage needed and requested this bulldozer, Cage Bros., with the apparent acquiescence of Joe B. Cage, declined to return the machine from Galveston where it was still in use, and instead sent one of their own bulldozers to Joe B. Cage. After the Galveston job was completed, the D–8 bulldozer remained under the control of Cage Bros.

Cage Bros. assert that, as a matter of law, the "Purchase Order" of August 31, 1959, executed by Joe B. Cage and Holt, provided only for rental contracts, which terminated for non-payment of rent. Therefore, it is asserted that on May 15, 1961, Joe B. Cage had no interest in the two machines. In support thereof, Cage Bros. cite Purity Creamery Co. v. Hays, Tex.Civ.App., 4 S.W.2d 1056, no writ hist. It was there held there was no evidence to support the trial court's judgment that a contract very similar to that executed by Joe B. Cage, was a sale. The judgment was reversed and the cause remanded after the reviewing court found that *all evidence established a rental contract.*

■ Here, however, there is ample evidence to support the finding by the jury that the agreement between Holt and Joe B. Cage gave him an option to purchase the machines. A Holt official testified that the machines would not have been rented at this rate for six months, and that they intended to sell the machines to Joe B. Cage. There was never any discussion between Holt and Joe B. Cage in regard to terminating this contract, and it is seen that by February, 1961, the purchase price of the machines had been substantially paid. Holt did not make any demand on Joe B. Cage for the unpaid monthly payments. Cage Bros. received credit on the purchase price for all monthly payments. The jury found that the agreement of May 15, 1961, between Holt and San Pedro Equipment Co., was for San Pedro to succeed to all the rights of Joe B. Cage under his option contract.

■ It is our opinion that Joe B. Cage had an equitable interest in the machines at the time San Pedro Equipment Co., without his knowledge or permission, succeeded to his rights. Grabes v. Fawcett, Tex.Civ.App., 307 S.W.2d 311, no writ hist.; Hart v. Meadows, Tex.Civ.App., 302 S.W. 2d 448, writ ref., n. r. e., 50 T.J.2d, Sales, § 69. An absolute, unqualified ownership is not required to maintain an action for conversion. Bradley v. McKenzie, Tex.Civ. App., 226 S.W.2d 458, no writ hist.; 14 T.J.2d, Conversion, § 3.

■ We see no error in the trial court's action in granting Joe B. Cage judgment for title to the maintainer and allowing Cage Bros. and San Pedro a set-off for the amount they had paid or were obligated to pay Holt on this maintainer.

■ Cage Bros. and San Pedro had exclusive control and use of the bulldozer after February 7, 1961. The trial court therefore properly granted Joe B. Cage judgment for the market value of the bulldozer on February 7, 1961, with a set-off being allowed Cage Bros. and San Pedro

for their payments or obligations on same. Commercial Credit Corp. v. Flores, Tex. Civ.App., 345 S.W.2d 432, writ ref. n. r. e.; Morriss v. Knepper, Tex.Civ.App., 10 S.W. 2d 1012, no writ hist. There was no error in excluding from this set-off the amount paid Holt for modifications made on the bulldozer at the request of Cage Bros. after February 7, 1961. The trial court properly exercised its discretion in denying Joe B. Cage recovery of the rental value of the bulldozer in view of the relationship of the parties.

■ Joe B. Cage is entitled to prejudgment interest on this market value. Commercial Credit Corp. v. Flores, supra. It is our opinion, however, that the set-off allowed Cage Bros. and San Pedro should be taken before the computation of interest, in that the judgment of the trial court permits Joe B. Cage to recover interest on money paid or obligated to be paid by San Pedro. This would be an unjust enrichment.

In September, 1960, Cage Bros. secured the bid for construction of twenty-six miles of highway known as the Aransas-Refugio County Job and Joe B. Cage was named area superintendent of this job. All of Joe B. Cage's equipment was used on this job and it was necessary to supplement his equipment with a substantial amount belonging to Cage Bros. Cage Bros. asserted that this job was bid on behalf of Joe B. Cage as an affiliated operator and they sought an accounting on this basis. Joe B. Cage asserted that this was a Cage Bros. job and that Tom C. Cage had placed him in charge and directed him to use Joe B. Cage's men and equipment. He testified that Tom C. Cage said he would pay for this use. The jury resolved this dispute in favor of Joe B. Cage, and the trial court granted Joe B. Cage judgment for the reasonable rental value of the equipment used on the job.

■ Cage Bros. assert on this appeal that Joe B. Cage is only entitled to recover his equipment payments, since he testified that he had been paid in this manner on other jobs. There was no evidence, however, that he had agreed to be so compensated on this occasion. There was testimony from Joe B. Cage that Tom C. Cage agreed to pay him for the use of the equipment, but the amount was not discussed. In this situation Joe B. Cage was properly permitted to recover on an implied contract for the reasonable rental value of this equipment. Meier v. Murphy, Tex.Civ. App., 207 S.W.2d 947, writ ref., n. r. e.; 17 A C.J.S., Contracts, § 363. Cage Bros. and San Pedro were not harmed by the trial court's action in not permitting interest on either the rental value of the equipment or on the set-off allowed against same by reason of the amount owed Cage Bros. by Joe B. Cage on an open account.

■ We have considered Cage Brothers' points which complain of the submission of Question No. 10 in the Charge of the Court. This issue was raised by the pleadings and evidence and the court did not err in the submission of this element of conversion. Further, there was no error in taxing the costs against Cage Bros. and San Pedro Equipment Co. under the judgment of the court.

The judgment of the trial court is reformed by deleting the recovery of prejudgment interest in the amount of $3,220.-00 and providing in lieu thereof that Joe B. Cage recover of and from Cage Bros. and San Pedro Equipment Co., jointly and severally, the sum of $16,569.84, with interest thereon at the rate of 6% per annum from February 7, 1961, until paid. In all other respects the judgment of the trial court is affirmed. The costs of this appeal are taxed two-thirds against Cage Bros. and San Pedro Equipment Co., jointly and severally, and one-third against Joe B. Cage.