Terry **HENDRIX** et al., Appellants,

v.

**JONES–LAKE CONSTRUCTION COMPANY** et al., Appellees.

No. 1264.

Court of Civil Appeals of Texas, Corpus Christi.

Aug. 29, 1978.

Rehearing Denied Sept. 21, 1978.

Gordon L. Briscoe, Brownsville, Chavez & Barnard, Harlingen, for appellants.

Marshall W. Graham, Adams, Graham, Jenkins, Graham & Hamby, Harlingen, Cecil D. Redford, Dyer, Redford, Burnett, Wray & Woolsey, Corpus Christi, for appellees.

## OPINION

NYE, Chief Justice.

This is a suit for personal injuries. Appellant, Terry Hendrix, brought suit against appellee Jones–Lake Construction Company (hereinafter Jones–Lake), the owner and general contractor, and appellee Valley Roofing Company (hereinafter Valley Roofing), the roofing contractor, to recover damages for personal injuries Hendrix sustained when he fell through an unguarded skylight opening in the roof of a warehouse under construction in Brownsville, Texas. United States Fidelity & Guaranty Company intervened to recover money previously paid to or on behalf of Hendrix under a workmen's compensation insurance policy. The jury convicted each defendant of negligence in failing to guard the skylight opening which was a proximate cause of the accident and found contributory negligence on the part of Hendrix. In response to the comparative negligence issue, the jury found Hendrix to be 20% negligent. Thereafter, the trial court granted defendants' motions for judgment non obstante veredicto on the basis that the open skylights were an open and obvious danger, and therefore, Jones–Lake and Valley Roofing owed Hendrix "no duty" to guard the skylight openings in the roof. Hendrix appeals to this Court from the trial court's take nothing judgment.

On May 29, 1974, the date of Hendrix's accident, Jones–Lake, owner and general contractor, and Valley Roofing, the roofing subcontractor, along with other subcontractors, were constructing a block building with a steel substructure to be used as a warehouse. Hendrix was employed as a bricklayer by the W. Merle Hazel Company, the masonry subcontractor on the job. The warehouse was approximately 300 feet long, 120 feet wide and 22 feet high. The warehouse plans and specifications called for 16, 4-foot square skylights located

across the roof at 40 foot intervals. In accordance with these plans, the steel erection subcontractor erected the steel substructure for the roof surface and cut holes at appropriate intervals for the skylight openings. Valley Roofing had a subcontract with Jones–Lake to complete the roof surface. The roof surface plans called for a bottom layer of insulation board, covered by three plies of felt paper, tar coated, and finally completely topped with gravel. Jones–Lake employees were responsible for placing the skylight covers over the open holes. This they planned to do after Valley Roofing completed all phases of its roofing job.

The W. Merle Hazel Company, Hendrix's employer, had the masonry subcontract to lay the concrete blocks from the ground to the top of the steel deck underlying the roof. Prior to the accident, the masons worked from scaffolding located inside the building. At the time of the accident, the blocks had been laid to a height just beneath the bottom of the steel girders and almost to the top of the steel deck. At this height, the position of the steel girders interfered with completing the block wall from the scaffolding located inside the building. The masons then found it necessary to work from the top edge of the roof to complete the job. Half of the crew remained on the scaffold to spread the mortar and to transfer the necessary materials to the other half of the crew on the roof who then laid the blocks in place.

On the day of the accident, May 29, 1974, the masons worked approximately two hours on the scaffolding before they split up. Hendrix and two other masons then ascended to the roof from a ladder located outside of the building. Hendrix was the first man to reach the roof top. As he was walking diagonally across the roof toward the location where the masonry crew was working below, Hendrix heard a shout or whistle. He momentarily turned his head in the direction of the noise to determine whether someone was shouting a warning to him. As he turned his head, Hendrix stepped into and fell through the unguarded skylight opening to the ground below.

He sustained fractures of four lumbar vertebrae.

Hendrix filed suit against Jones–Lake and Valley Roofing alleging that each defendant was negligent in failing to provide a temporary cover for the skylight openings. At the close of the evidence presented at trial, Jones–Lake and Valley Roofing each filed motions for an instructed verdict predicated on the theory that neither defendant owed Hendrix a duty to cover or protect the unguarded skylights because such skylights constituted an open and obvious danger as a matter of law. The trial court overruled these motions and allowed the case to go to the jury. During the course of the trial, the undisputed evidence showed that the unguarded skylight openings presented a hazardous condition to all of the workmen on the construction project who had to go up on the roof in order to perform their work. It was also undisputed that each foreman of the respective defendants knew of the hazardous and dangerous condition as it would affect Hendrix while discharging his duties as a workman. The court then submitted relevant special issues to the jury which found: 1) negligence and proximate cause attributed to Jones–Lake's failure to provide a temporary cover on the open skylights; 2) negligence and proximate cause attributed to Valley Roofing's failure to guard the open skylights with a temporary cover; 3) negligence and proximate cause attributed to Hendrix's failure to keep a proper lookout; 4) that Hendrix was 20% negligent; and 5) that Hendrix sustained damages in the amount of $80,-790.50. After the verdict was returned, the defendants filed motions for judgment non obstante veredicto stating that the trial court erred in failing to grant the motions for instructed verdicts based on "no duty" doctrine. After a hearing, the trial court granted the motions, disregarded the liability issues pertaining to each defendant, and rendered a take nothing judgment.

■ Hendrix's major contention on appeal is that the trial court erred in granting defendants' motions for judgment non ob-

stante veredicto because the unguarded skylight openings did not present open and obvious danger as a matter of law. The granting of a motion for judgment non obstante veredicto is authorized by Rule 301, T.R.C.P., when a directed verdict would have been proper. *Eubanks v. Winn,* 420 S.W.2d 698, 701 (Tex.Sup.1967). To sustain the action of the trial court, which granted a judgment non obstante veredicto, it must be determined that there is no evidence on which the jury could have made the findings relied upon. An instructed verdict is proper only under very limited circumstances. *Newitt v. Camden Drilling Co.,* 552 S.W.2d 928, 931 (Tex.Civ.App.—Corpus Christi 1977, no writ); McDonald, Texas Civil Practice, § 11.28.1 (1970).

■ Appellant's other point of error is that he produced more than a scintilla of evidence which supports each of the essential jury findings set out above. In our opinion, there is ample evidence in the record to support the jury's answers to the liability and proximate cause issues which charged each defendant with negligence in failing to guard the open skylights with temporary covers. Both Jones–Lake and Valley Roofing contend, however, that these issues were improperly submitted and the trial court should have instructed a verdict in their favor. In any event, they argue, the trial court correctly granted the judgment non obstante veredicto because the unguarded skylight holes were open and obvious; Hendrix knew the openings were there; that the openings were not hidden or latent; that Hendrix knew and appreciated the danger and that as a matter of law there was no duty to cover or protect the openings or to warn Hendrix of a danger of which he already knew.

■ Hendrix was a business invitee of the occupiers, Jones–Lake and Valley Roofing. See *Smith v. Henger,* 148 Tex. 456, 226 S.W.2d 425, 431 (1950); *Snelling v. Harper,* 137 S.W.2d 222, 225 (Tex.Civ.App.—Texarkana 1940, error dism'd judgm't cor.). Before *Parker* (which we discuss later in this opinion), our Supreme Court outlined the "no duty" doctrine in *Halepeska* as follows:

" . . . the occupier of land or premises is required to keep his land or premises in a reasonably safe condition for his invitees. This includes a duty of the occupier to inspect and to discover dangerous conditions. (Citations omitted). His duty is to protect his invitees from dangers of which he, the occupier, knows, or (because of his duty to inspect) of which he *should* know in the exercise of ordinary care. If there are dangers which are not open and obvious, he is under a *duty* to take such precautions as a reasonably prudent person would take to protect his invitees therefrom or to warn them thereof. But if there are open and obvious dangers of which the invitees know, or of which they are charged of knowledge, then the occupier owes them '*no duty*' to warn or to protect the invitees. This is so, the cases say, because there is 'no duty' to warn a person of things he already knows, or of dangerous conditions or activities which are so open and obvious that as a matter of law he will be charged with knowledge and appreciation thereof."

*Halepeska v. Callihan Interests, Inc.,* 371 S.W.2d 368, 378 (Tex.Sup.1963).

Stated another way, a defendant owes no duty to an invitee who actually knows and appreciates the nature and extent of a specific danger or who is charged in law with such knowledge. One is charged in law with that knowledge and appreciation if the condition is open and obvious to the invitee. *Massman–Johnson v. Gundolf,* 484 S.W.2d 555, 556 (Tex.Sup.1972). See also *McKee v. Patterson,* 153 Tex. 517, 271 S.W.2d 391 (1954). Hendrix had the burden to make a prima facie showing that he did not know of and did not appreciate the particular risk that caused him mischief and that he was not charged in law with knowledge and appreciation of the particular risk.

" . . . When one speaks of a condition as being open and obvious, the phrase means that there is no dispute in the evidence or the facts which will charge an invitee with knowledge and

full appreciation of the nature and extent of danger. It means that knowledge and appreciation of the danger are considered as proved as a matter of law."

*Adam Dante Corporation v. Sharpe,* 483 S.W.2d 452, at 458–459 (Tex.Sup.1972).

■ Representatives of both Jones–Lake and Valley Roofing testified that they had knowledge of the open skylights and that the plans and specifications did not anticipate that these skylights would be covered until Valley Roofing completed its work on the roof surface. There is ample testimony in the record on behalf of both defendants that such open skylights created a potential hazard for workers on the job. Mr. Robinson, the job superintendent in charge of the construction for Jones–Lake, testified that it was foreseeable at the time construction of the building commenced that employees of several subcontractors would be working on top of the roof in addition to the roofing subcontractors' employees prior to the time the actual skylights were to be installed. Charles Phillips, an owner and partner of Valley Roofing, admitted that his roofers, who worked on the rooftop eight hours a day, were more prepared to meet the dangers inherent in the unguarded openings than other workers who were not accustomed to working around such openings.

Hendrix testified that he was generally aware of the open, unguarded skylight holes on the roof because when he was working inside the building the sun shone through the holes which made the openings highly visible to workers. Hendrix also admittedly was aware of the danger of falling through a hole. The undisputed evidence is, however, that Hendrix had a very limited knowledge and appreciation of the danger of the open skylights as they appeared from a different vantage point—from the top of the roof, looking downward. On the day of the accident, Hendrix fell through the unguarded skylight opening almost immediately after he first attempted to cross the roof.

There is considerable testimony in the record that the visibility of the skylight holes from the vantage point of a person on the roof varied depending upon the weather circumstances. At the time of the accident, the roof was covered with layers of roofing felt paper of various dark shades of black, gray and brown. The evidence showed that these dark colors had a tendency to camouflage the dark skylight openings, particularly on a cloudy, overcast day, looking downward. Edward M. Morris, a safety expert, testified that "the lack of contrast between the edges, the interior edges of the hole, the shadow inside the hole and the shade of the material on the roof, it does deny a clear vision of the hole, especially under cloudy circumstances." Hendrix testified that on the day of the accident the sky was very overcast with very little sun, if any, to illuminate the exterior edges of the holes. He further testified, in essence, that the holes were not visible in normal peripheral vision because of the general camouflaged condition combined with the weather conditions. Compare *W. R. Grimshaw Company v. Zoller,* 396 S.W.2d 477 (Tex.Civ.App.—San Antonio 1965, writ ref'd n. r. e.); *Coffee v. F. W. Woolworth Co.,* 536 S.W.2d 539 (Tex.Sup.1976), and *Blanks v. Southland Hotel, Inc.,* 149 Tex. 139, 229 S.W.2d 357, 359 (1950).

The testimony showed that both defendants considered the unguarded skylight openings to be a potential hazard, particularly if a worker was not watching for the holes. Both defendants also admitted that there were two major problems inherent in the construction industry, the first being construction site hazards, and the second, worker distraction. Both defendants admitted workers are constantly subject to being distracted by construction site sounds and activity. The safety expert testified that, in effect, shouts are used in the construction industry to alert the workers to be on guard for a particular danger such as "something falling, something swinging, a crane load loose." He testified that when someone shouts, everyone looks around to make sure the shout is not intended to alert him.

The above mentioned evidence is relevant to Hendrix's actual knowledge and appreci-

ation of the particular danger and to whether or not the unguarded skylights were so open and obvious to charge him with such knowledge and appreciation as a matter of law. Although he was generally aware of the existence of the unguarded openings from his previous vantage point working inside the building, looking up, he had no proper opportunity to acquaint himself with the danger as it appeared from a different vantage point on the rooftop, looking downward. He testified, in effect, that the holes, as camouflaged by the dark felt paper and lack of sunlight, were difficult to see. Due to the poor visibility, Hendrix could not tell how close he was to the unguarded opening. The record showed that Hendrix turned his head momentarily in response to a shout or whistle. He fell through the hole an instant later. We cannot say that the record establishes conclusively that Hendrix knew and appreciated the extent of the dangers under the fact circumstances of this case. Nor can we say that the holes were so open and obvious to charge him with such knowledge and appreciation of the danger as a matter of law. We hold that the trial court correctly submitted the case to the jury in the first instance. It erred thereafter, by granting the defendants' motion for judgment non obstante veredicto.

We have concluded that plaintiff Hendrix is entitled to a judgment based on the undisputed evidence and the properly submitted negligent issues, which were supported by sufficient evidence. We also recognize that our Supreme Court has expressly abolished the "no duty" or "open and obvious" concepts in cases that are similar to the one before us. *Parker v. Highland Park, Inc.,* 565 S.W.2d 512 (Tex.Sup.1978). The parties here, in post-submission briefs, now raise the question of whether the *Parker* case should specifically control the dis-

position of this case here on appeal irrespective of the evidence.

Subsequent to the adoption of the comparative negligence statute, Article 2212a, V.A.T.S., Texas lawyers and judges have long known of the progressive abolition of various negligence doctrines that spelled total victory and total defeat for an injured party. See e. g., *Davila v. Sanders,* 557 S.W.2d 770, 771 (Tex.Sup.1977); *Abalos v. Oil Development Co. of Texas,* 544 S.W.2d 627 (Tex.1976) (concurring opinion); *Farley v. M M Cattle Company,* 529 S.W.2d 751 (Tex.Sup.1975); *Rosas v. Buddies Food Store,* 518 S.W.2d 534, 538–539 (Tex.Sup. 1975). Appellees contend that the applicability of *Parker* is prospective and applies only to cases tried after February 8, 1978, the date the *Parker* decision was announced by our Supreme Court. The appellants, on the other hand, argue that had the Supreme Court intended to make the abolition of the "no duty" doctrine prospective, *Parker* would have been affirmed rather than reversed and rendered and our High Court would have made the doctrine applicable to all *causes of action* arising after the date of its decision in *Parker.* This advance notice would have allowed owners and occupiers of land to protect themselves against future losses.

Justice Pope, writing for the majority, held in *Parker:*

"We now expressly abolish the so-called no-duty concept in this case and, as expressed in *Farley,*[1] 'henceforth in the trial of all actions based on negligence . . .' The reasonableness of an actor's conduct under the circumstances will be determined under principles of contributory negligence."

*Parker v. Highland Park, Inc.,* supra at 517. Appellees contend that the express language "henceforth in the trial . . . " means that the *Parker* decision should be

---

1. In *Farley v. M M Cattle Company,* 529 S.W.2d 751, 758 (Tex.Sup.1975), our Supreme Court abolished the doctrine of volenti non fit injuria in negligence actions. Justice Johnson, writing for the majority in *Farley,* held:

"We therefore hold that for this trial, and henceforth in the trial of all actions based on

negligence, *volenti non fit injuria* —he who consents cannot receive an injury—or, as generally known, voluntary assumption of risk, will no longer be treated as an issue. Rather, the reasonableness of an actor's conduct in confronting a risk will be determined under principles of contributory negligence."

applied only to cases tried after February 8, 1978, the date of the Supreme Court decision. They take the position, in essence, that the "no duty" concept still applies to. this case because the trial court's judgment was entered on May 23, 1977, even though the validity of that judgment was pending appellate review, and in that sense not final, at the time the *Parker* decision was reached. On the other hand, Hendrix reasons that had the Supreme Court intended its decision in *Parker* to be prospective, the Supreme Court would not have abolished the "no duty" concept as to the litigants in *Parker.* Hendrix says that the holding in *Parker* represents the Supreme Court's instruction of what law should govern in the trial of all other cases.

The Supreme Court's pronounced language is clear. "We *now* expressly abolish the so-called no-duty concept in this case . . . " (Emphasis supplied). What is not so clear is the disposition of cases where the trial court's judgment has not become final prior to the *Parker* decision because of a pending appeal. Hendrix speculates and says that had this case already been decided adversely to him, and had his application for writ of error been pending in the Supreme Court (all of which could have been possible), there would be no doubt that the Supreme Court would have reversed and rendered this case along with *Parker,* or would have decided the issue the same as in *Parker* had the *Parker* case arrived after the present case. We agree.

In *Parker,* Mrs. Parker was injured on October 23, 1971. Her case was tried approximately two years later and decided in the Court of Civil Appeals in 1976. Our case was tried after the *Parker* case. If we found that it was necessary to apply the no longer accepted "no duty" concept to a case pending before us after the Supreme Court had unanimously abolished the doctrine, it would unnecessarily incur an injustice on an injured party. However, since there is more than a scintilla of evidence supporting the jury's answers to the issue submitted by the trial court, it is unnecessary for us to reach this conclusion.

The judgment of the trial court is REVERSED and judgment is here RENDERED that appellant Terry Hendrix recover against appellee Jones–Lake Construction Company the sum of $28,782.79, and against Appellee Valley Roofing Company the sum of $19,188.53, and that appellant United States Fidelity & Guaranty Company recover against Jones–Lake Construction Company the sum of $9,996.65 and against appellee Valley Roofing Company the sum of $6,664.43; and for interest from the date of judgment.

REVERSED AND RENDERED.