Emmit WOOD and John Stensland, Appellants,

v.

TEXAS FARMERS INSURANCE CO. et al., Appellees.

No. 1433.

Court of Civil Appeals of Texas, Corpus Christi.

Dec. 28, 1979.

Rehearing Denied Feb. 14, 1980.

Charles C. Webb, Jr., Corpus Christi, for appellants.

John Stensland, pro se.

Fred C. Auforth, Corpus Christi, for appellees.

OPINION

YOUNG, Justice.

This appeal arises from a judgment non obstante veredicto, disregarding special issue findings supporting quantum meruit recovery on an implied contract wherein Emmit Wood and John Stensland had sued several insurance companies doing business as Farmers Insurance Group. Appellants, who are agents of appellee insurance companies, allegedly performed extra work not compensated by their employment contract. A jury found that this extra work should have been compensated under quantum meruit. The trial judge, in rendering its judgment non obstante veredicto, found no evidence of probative force to sustain the findings of the jury. This appeal follows.

A summary of the pertinent facts reflects the following. Appellees have several agents in the Corpus Christi area who sell their insurance and service the needs of the policyholders. One of appellees' agents in December of 1975 had difficulties, which resulted in the termination of the agent's business relationship with appellees. The agent had approximately 320 policies that required immediate supervision at the local level. Appellees assigned those policies to the appellants, who were new agents of appellees. Appellants, believing that the transfer of the policies was permanent in nature, began taking steps to establish themselves as the agents on the policies. They notified most of the policyholders of the change in agents, handled inquiries concerning the policies, and established an office to centralize services for the policies.

At the end of February 1976, appellees reinstated the previously terminated agent and reassigned his policies back to him. Appellees maintain that the policies were only temporarily assigned to the appellants and that they could remove them from appellants' control at anytime, which they did.

Appellants brought an action for oral contract and quantum meruit for the services they allegedly rendered to the appellees. The trial judge sustained appellees' special exception to the appellants' cause of

action based on oral contract. So the case was tried only on the cause of action alleging quantum meruit. A jury found in favor of the appellants, but the trial judge granted the appellees' motion for judgment non obstante veredicto on the grounds of lack of probative evidence to support the findings of the jury.

The central focus of this appeal is appellants' contention that the trial judge incorrectly disregarded the findings of the jury in granting the appellees' motion for judgment non obstante veredicto. Points of error 1 through 6 and 14 pertain to the special issue which, according to the appellants, the jury correctly answered in their favor, and therefore their motion for judgment on those findings should have been granted in favor of appellants. Points of error 7 through 13 directly attack the granting of appellees' motion for judgment non obstante veredicto.

■ It is a remedy which should be used only in very limited circumstances. *Hendrix v. Jones-Lake Const. Co.*, 570 S.W.2d 546, 549 (Tex.Civ.App.—Corpus Christi 1978, writ ref'd n. r. e.). The circumstances in which judgment non obstante veredicto should be used are the same as those when an instructed verdict is proper. *Ottis v. Haas*, 569 S.W.2d 508 (Tex.Civ.App. —Corpus Christi 1978, writ ref'd n. r. e.); *Newitt v. Camden Drilling Co.*, 552 S.W.2d 928 (Tex.Civ.App.—Corpus Christi 1977, no writ); see McDonald, Texas Civil Practice § 11.28.1 (1970).

■ When a case is tried on special issues, there must be evidence to support each element of the cause of action put before the court. In the words of this Court, "special issue findings may be disregarded if they are immaterial or have no support in the evidence." *Brownsville & Matamoros Bridge Co. v. Null*, 578 S.W.2d 774, 780 (Tex.Civ.App.—Corpus Christi 1979, writ ref'd n. r. e.).

■ In analyzing the record for some evidence to support each element of the plaintiff's theory of recovery, the reviewing court must follow certain well-established

guidelines when evaluating the evidence: 1) consider only that evidence which tends to support the finding; 2) every intendment from the, evidence should be indulged in favor of the findings; and 3) disregard all evidence which conflicts with the jury findings. *Newitt v. Camden Drilling Co.*, supra at 931.

As we have heretofore mentioned, the case at bar was tried on the theory of quantum meruit. This Court has repeatedly held that quantum meruit has four component elements: (1) valuable services were rendered or materials furnished; (2) for the person sought to be charged; (3) which services and materials were accepted by the person sought to be charged, used and enjoyed by him; and (4) under such circumstances as reasonably notified the person sought to be charged that the plaintiff, in performing such services, was expecting to be paid by the person sought to be charged. *City of Ingleside v. Stewart*, 554 S.W.2d 939 (Tex.Civ.App.—Corpus Christi 1977, writ ref'd n. r. e.); *McDaniel v. Tucker*, 520 S.W.2d 543 (Tex.Civ.App.—Corpus Christi 1975, no writ); *Ryan v. Thurmond*, 481 S.W.2d 199 (Tex.Civ.App.—Corpus Christi 1972, writ ref'd n. r. e.); *Montes v. Naismith and Trevino Construction Co.*, 459 S.W.2d 691 (Tex.Civ.App.—Corpus Christi 1970, writ ref'd n. r. e.).

■ Our review of the record to identify any evidence which would support the presence of these elements of quantum meruit, reveals there could possibly be come evidence to support each element. A problem arises, however, because the evidence supporting the elements of quantum meruit also supports the existence between the parties of an express contract, which was introduced into evidence as the Farmers Insurance Group Agent Appointment Agreement. An express contract and an implied contract in equity do have many of the same elements; however, if an express contract exists which sets out all the obligations of the parties for the tasks to be accomplished, then an action in quantum meruit is not available. See 13 Tex.Jur.2d Contracts § 6 and § 7 (1960). In order to

fully distinguish between situations in which the remedy of quantum meruit is available and cases in which recovery can only be accomplished through the provisions of the express contract, it is necessary for us to examine the theory of quantum meruit further.

The doctrine of quantum meruit is based on the principle of equity that a party deserves to be paid for the services or materials he furnishes. It takes the form of an implied promise to pay for beneficial services rendered and knowingly accepted. *Davidson v. Clearman*, 391 S.W.2d 48 (Tex. Sup.1965). A person should be compensated for his efforts when an express contract does not provide recovery for the reasonable value of the services rendered and accepted. *Black Lake Pipe Line Co. v. Union Const. Co., Inc.*, 538 S.W.2d 80 (Tex.Sup. 1976).

Recovery under quantum meruit, therefore, is possible even though an express contract exists between the parties. *City of Galveston v. O'Mara*, 146 S.W.2d 416 (Tex.Civ.App.—Galveston 1940), affirmed as correctly announcing the law 138 Tex. 16, 155 S.W.2d 912 (1941); see also *Woodard v. Southwest States, Inc.*, 384 S.W.2d 674 (Tex.Sup.1964). The action based on quantum meruit, however, must involve obligations outside the scope of the express contract. Recovery on quantum meruit is not possible if the obligation was created by the express contract. As the Dallas Court of Civil Appeals reasoned, "(w)here the contract speaks, recovery cannot be had on quantum meruit." *Dallas Electric Supply Co. v. Branum Co.*, 185 S.W.2d 423 (Tex.Civ. App.—Dallas 1944) aff'd, 143 Tex. 366, 185 S.W.2d 427 (1945).

The Supreme Court recently established a two-pronged test to determine whether the performance of certain tasks is outside of the obligations provided for in an express contract: 1) whether the work performed by the party is extra; 2) whether the express contract between the parties makes provision for the extra work performed. *Black Lake Pipe Line Co. v. Union Const. Co., Inc.*, supra at 86. Each of these requirements must be analyzed in light of the facts of this case to determine whether the remedy of quantum meruit was available to the appellants.

A threshold problem of evaluating the "extra work" test is first to determine what the "work" was. The insurance policies in question were previously serviced by one of appellees' agents in Corpus Christi. That agent encountered legal difficulties, so appellees removed these policies from the agent's control. Appellees then assigned the policies to the appellants, who could provide immediate supervision of the policies on a local level. These policies, approximately 320 in number, did not require service everyday. But rather an agent had to be available locally to service the needs of the policyholders in case a need for service arose.

There is conflicting evidence on whether the assignment of the policies was temporary in nature. Appellees designated the policies as being a part of the 500 series, a computer code indicating that no agent was permanently in charge and that the policies were subject to reassignment. Appellants claimed that they did not know the significance of the 500 series designation, nor did they believe that the assignment was temporary.

The contract between the parties does assist this Court in determining the status of the 500 series policies. The proposition that assignment of the 500 series policies was temporary in nature is reinforced by section G of the contract which specifically excludes service commissions on 500 series policies as a part of the value of the agent's contract. This contractual provision establishes that these policies are so independent of the agent that commissions on these policies are not calculated in determining the value of the agent's services.

It is our conclusion that as a matter of law the assignment of these policies to the appellants was temporary in nature, subject to reassignment whenever the company desired. Therefore, the appellants cannot claim long-term interest in the commissions

on these policies but should only be compensated for their efforts while the policies were in their control.

Appellants had the policies under their control for a period of one to three months. During that time the appellants performed various tasks to service the policies. These acts can be divided into two areas: maintenance of the policies themselves and establishment of an office and personnel. These efforts by the appellants must be examined to see whether they involve extra work outside the provisions of the contract between the parties.

█ In order to maintain and service the newly-acquired policies, the appellants allegedly contacted the majority of the approximately 320 policyholders, by mail or phone, informing them of the change in agents and inviting them to contact the appellants if they had any questions about their policies. During the period the appellants supervised the policies, there were nine occasions that required some work effort by the appellants. Only two of these transactions involved claims, the rest being minor changes in name or property of the insured.

The contract between the parties, known as Farmers Insurance Group Agent Appointment Agreement, includes a provision as follows [§ B(2)]: "The Agent agrees in consideration of the Companies' agreements . . . receiving and adjusting claims within his authority, notifying the Companies of all claims beyond his authority, and servicing all policyholders of the Companies in such a manner as to advance the interests of the policyholders, the Agent and the Companies." This provision clearly includes as a part of the contract all of the following acts by the appellants in this case: handling claims, servicing the policies, and providing the policyholders with an agent. These activities do not amount to extra work beyond the duties of an agent as set out in the contract.

█ The second area of possible extra work by the appellants involves the establishment of an office and personnel. The

acquisition of the new policies allegedly required the establishment of this office with additional personnel and office equipment. Up to the time of receiving the new policies, the appellants, as agents of the appellees, had operated from their own homes.

Once again, the contract speaks clearly on the matter [§ B(2)]: "(t)o provide the facilities necessary to furnish insurance services to all policyholders of the Companies . .". An agent who signs the Agent Appointment Agreement thus must provide an office to handle the needs of the policyholders. The contract could not be more clear in the duty it establishes in that regard for the agent. We cannot say that the acts of establishing an office with additional personnel and equipment amount to "extra work" by the appellants that require compensation under quantum meruit.

None of the work performed by the appellants can be considered extra work that was not contemplated by the parties at the time the contract was entered into. We do not have to consider whether "the extra work was covered by the contract," the second prong of the Supreme Court test. There was no "extra work" performed by the appellants.

The appellants should have been compensated for their efforts as set out in the contract by the provisions of that same contract. Even though the question of adequacy of compensation is not before this Court, the appellants were compensated for their work and therefore no breach of the express contract occurred. Appellants received both compensation for office expenses and commissions on policies they sold, which is the primary source of income for insurance agents. As the Supreme Court stated in affirming the Dallas Court in *Dallas Electric Supply Co. v. Branum Co.*, the "contract expressly covered the subject by providing for very substantial commission to the agent for all its services." *Dallas Electric Supply Co. v. Branum Co.*, 185 S.W.2d 423 (Tex.Civ.App.—Dallas 1944) aff'd, 143 Tex. 366, 185 S.W.2d 427, 429 (1945); see also *Woodard*, supra at 675; *Taylor v. Rigby*, 574 S.W.2d 833 (Tex.Civ.

App.—Tyler 1978, writ ref'd n. r. e.); *Freeman v. Carroll*, 499 S.W.2d 668 (Tex.Civ. App.—Tyler 1973, writ ref'd n. r. e.).

 Appellants also argue, in point of error 15, that the trial judge improperly sustained special exception 1 of the appellees which eliminated the cause of action of oral contract. The trial court held, and we concur, that the alleged oral contract between the parties violated § 26.01 of the Texas Business and Commerce Code (which bars recovery on an oral contract not performable within one year). Point of error 15 is overruled.

Appellants in their last point of error (point 16) contend that the trial judge should have submitted appellants' requested special issues. Under Rules 277 and 279, T.R.C.P., the trial court is permitted broad discretion in the submission of special issues. *State v. Norris*, 550 S.W.2d 386 (Tex. Civ.App.—Corpus Christi 1977, writ ref'd n. r. e.); see: Pope and Lowerre, The State of the Special Verdict, 11 St. Mary's L.J. 1 (1979). We find no abuse in this discretion. It is our belief that the judge submitted the proper issues to the jury.

All points of error of the appellants have been carefully considered by us and we overrule all of them. Because of the disposition we have made of appellants' points of error, it is unnecessary for us to resolve appellees' cross-points.

The judgment of the trial court is affirmed.