**Jose SENDJAR, Jr., et al., Appellants,**

**v.**

**J. C. GONZALEZ, M.D., Appellee.**

**No. 15346.**

Court of Civil Appeals of Texas,
San Antonio.

Feb. 26, 1975.

F. I. Gandy, Jr., Corpus Christi, for appellants.

Wood, Boykin & Wolter, Corpus Christi, for appellee.

CADENA, Justice.

Plaintiffs, Jose Sendejar, Jr., and his father, Jose Sendejar, filed this suit for damages for personal injuries suffered by Jose Sendejar, Jr., as a result of the alleged negligence of defendants, Alice Physicians and Surgeons Hospital, Inc., Dr. D. R. Halverson, Dr. J. C. Gonzalez and American Medical International, Inc. Plaintiff's appeal from a summary judgment that they take nothing as against defendant, Dr. J. C. Gonzalez. The judgment of the trial court also severed and set for separate trial plaintiffs' cause of action against the other three defendants.

In this opinion, the word "plaintiff" will be used to designate Jose Sendejar, Jr.

The cause of action against Dr. Gonzalez is based upon the following theories: (1) The negligence of Dr. Halverscn, who is described as the agent of Dr. Gonzalez. (2) The failure of Dr. Gonzalez to inform Alice Physicians and Surgeons Hospital or his answering service that he would not be available on May 15, 16, and 17, 1971, the period during which plaintiff was in the hospital, and that his patients should be referred to another physician. (3) The failure of Dr. Gonzalez to provide adequate personnel to treat his patients during his absence.

On May 15, 1971, plaintiff was injured in an automobile accident and was taken to Physicians and Surgeons Hospital in Alice. He was admitted to the hospital at about 11:30 p. m. He was seen and treated by Dr. Halverson, who was on duty in the hospital emergency room and X-rays were taken. The hospital records recite that Dr. Gonzalez is plaintiff's family doctor. Plaintiff remained in the Alice hospital until he was transferred to a hospital in Corpus Christi on May 17, 1971.

Dr. Gonzalez is a sole general practitioner who lives and maintains his office in Benavides, a small town about 30 miles from Alice. There is no answering service in Benavides. Dr. Gonzalez has never taken care of accident victims who are admitted to the Alice hospital.

At about noon on May 15, 1971, Dr. Gonzalez and his wife left Benavides and went to San Antonio in response to a call informing them that their son was hospital-

ized as a result of a ruptured disk. They visited their son in the hospital on Saturday, May 15, and then went to their son's home in Fredericksburg to take care of their grandchildren so that their daughter-in-law could visit her husband in the San Antonio hospital. They returned to Benavides around midnight Sunday, May 16, or early in the morning of the 17th. At about 8:00 a. m. on May 16, he received a call from the Alice hospital and was told that plaintiff had been in an accident and was in the hospital. He told the person calling him to call Dr. Dostal, in Alice, who usually "covered" for Dr. Gonzalez when the latter was not available. Some time later Dr. Dostal called Dr. Gonzalez and informed him that he had ordered plaintiff transferred to a hospital in Corpus Christi.

It is undisputed that when Dr. Gonzalez left Benavides on May 15, immediately after he received the call concerning his son, he failed to notify the hospital that he would be out of town for the weekend and failed to notify Dr. Dostal.

Dr. Gonzalez is a member of the staff of the Alice hospital. According to the hospital's regulation governing emergency room procedure, when a patient comes to the emergency room, he is asked to identify his doctor or "the doctor he saw last," and the hospital personnel are to call such doctor. If the patient knows no doctor, the policy is to call the member of the staff who is "on call" at the time. In any event, if the emergency room doctor is on duty, he is to be called first to see the patient. Because Dr. Gonzalez lived 30 miles away, he was never designated as the staff member "on call."

At a meeting of the members of the hospital staff held on December 8, 1970, the existence of "administrative and routine problems . . . concerning the duties and responsibilities of the emergency room physician" were discussed, and the doctors adopted the following procedure:

"A. At the discretion of the emergency room physician an attending staff physician shall be called for consultation with ER physician by the members of the nursing service. In order of their availability, the following doctors shall be called:

1) Family physician.

2) The temporary cover for the family physician.

3) The staff physician on call.

4) The chief of the proper staff service such as obstetrics, surgery or medicine.

5) The chief of staff."

Plaintiff's theory that Dr. Halverson, the physician who treated plaintiff in the emergency room, was the agent of Dr. Gonzalez is based on the following facts: Dr. Gonzalez was a member of the hospital staff. The staff doctors had adopted a plan, designed to permit them to avoid week-end duty in the emergency room, under which Navy doctors stationed at a naval base in Corpus Christi, assumed the emergency room duties at the Alice hospital on week-ends. Each member of the hospital staff contributed to a fund out of which the hospital administrator paid the "moonlighting" naval doctors. The hospital administrator, in answer to interrogatories, stated that when he paid the "moonlighting" doctors he did not withhold social security or income taxes, and that he considered the naval doctors to be "employees" of the staff doctors. The arrangements for the presence of the naval doctors in the emergency room were made by the hospital administrator and by the doctor who was chief of the hospital's medical staff.

In his deposition, Dr. Gonzalez stated that he had never met Dr. Halverson. The record establishes that, although Dr. Gonzalez was a member of the hospital staff, he had never been called for, or assigned to, emergency room duty.

■ The record establishes, as a matter of law, the absence of a principal-agent relationship between Dr. Gonzalez and Dr. Halverson. An essential element of the relationship of principal-agent or master-servant is the existence in the alleged principal or master of the right to control the actions of the alleged agent or servant. The facts of this case, even when viewed in the light most favorable to plaintiff, the opponent of the motion for summary judgment, establish no more than an undertaking by Dr. Gonzalez to furnish a physician to perform emergency room duties. From the very nature of things, Dr. Halverson's duties called for the exercise of his own judgment and his own skill when he was treating patients in the emergency room. That is, under the circumstances, the work of Dr. Halverson, in the absence of Dr. Gonzalez, was necessarily entirely free from the control of Dr. Gonzalez. Moore v. Lee, 109 Tex. 391, 211 S.W. 214 (1919); Anno: 85 A.L.R.2d 889, 897–902 (1962). The facts in Moore presented a much stronger case for the patient, since there the doctor had been caring for the patient, on a regular basis, during her pregnancy, and he sent a substitute only after he personally had received an urgent communication from his patient that his services were needed "in a hurry."

Plaintiff asserts that Dr. Gonzalez was negligent "in failing to inform his answering service or hospitals where he customarily treated his patients, of his absence from May 15, 1971, through May 18, 1971."

When Dr. Gonzalez left town on May 15, he was not treating plaintiff for any disease or condition, and at that time plaintiff was not under the care of Dr. Gonzalez. Although the hospital records show that plaintiff was admitted to the care of Dr. Gonzalez, and plaintiff's affidavit recites that he considered Dr. Gonzalez to be his family doctor, the record establishes that plaintiff had not seen Dr. Gonzalez for treatment of any kind during the year 1971.

The record establishes beyond dispute that the doctors in the area had established definite procedures to insure that patients admitted to the hospital would be properly attended even when the hospital personnel were unable to locate the physician of the patient's choice. Further, the hospital personnel knew that Dr. Gonzalez did not make hospital calls and that he had made arrangements to have his hospitalized patients attended by another doctor. These procedures and customs were well established, and the conclusion is ineluctable that, despite the failure of Dr. Gonzalez to make his unavailability known, the arrangements which he and the other doctors had made insured the availability of adequate medical attention for any person admitted to the hospital.

■ Dr. Gonzalez had the right to refuse to make hospital calls. Urrutia v. Patino, 297 S.W. 512 (Tex.Civ.App.—San Antonio 1927, no writ). The record before us compels the conclusion that the relationship of doctor and patient did not exist between Dr. Gonzalez and plaintiff on May 15, 1971. But, even if it be assumed that such relationship did exist at that time, the doctor's only duty was to make arrangements to insure that, during his absence or unwillingness to go to the hospital to treat his patient, competent medical help would be available to the patient. The practices, customs and procedures followed by the doctors in Alice and the surrounding area were such as to insure the availability of such attention, and, therefore, Dr. Gonzalez had not failed to discharge his duty.

■ The record before us establishes beyond dispute that Dr. Gonzalez was not guilty of "administrative" negligence in failing to provide adequate personnel to treat his patients during his absence. As pointed out in the preceding paragraph, Dr. Gonzalez and the other doctors in the area had taken the steps necessary to insure adequate treatment for a patient hospitalized during the absence or unavailability of the doctor of his choice. As far as

the competency of Dr. Halverson is concerned, the only "evidence" in the summary judgment record is the statement by Dr. Gonzalez to the effect that Dr. Halverson was a competent physician. The record establishes as a matter of law that Dr. Gonzalez did not breach his duty in making arrangements for Dr. Halverson to be on duty in the emergency room.

The judgment of the trial court is affirmed.