Charlie NEELEY and Earl Gilbert, Appellants,

v.

INTERCITY MANAGEMENT CORPORATION, Appellee.

No. 13–86–156–CV.

Court of Appeals of Texas, Corpus Christi.

March 23, 1987.

On Rehearing May 14, 1987.

Rehearing Denied June 30, 1987.

Willard I. Boss, Jr., John D. White, Watt & White, Houston, for appellants.

Thomas M. Andrews, Ellis, Andrews, Lawrence, Inc., Aransas Pass, for appellee.

Before NYE, C.J., and KENNEDY and BENAVIDES, JJ.

## OPINION

KENNEDY, Justice.

This is an appeal from a judgment on a suit for taxes, royalties, operating expenses, personal property and equipment rentals which the jury found were owed to plaintiffs, Intercity Management Corporation, Don Bodine and Marvin Schmalzreid by appellants Charlie Neeley and Earl Gilbert.

Intercity Management Corporation is the operating company on several oil leases. Neeley and Gilbert are leasehold working interest owners in all the fields that Intercity manages which are the subject of this suit. There is no written agreement between Intercity and the appellants. After authorization by its board of directors, Intercity originally brought suit to recover various expenditures from appellants from August 1983 through June 1985. Intercity was the operator of these fields. Neeley

and Gilbert moved to dismiss Intercity's case during trial, claiming that Intercity had no standing to sue because Intercity had no leasehold working interest in any of the leases. Intercity requested and received a trial amendment which made participating working interest owners, Schmalzreid and Bodine, plaintiffs. The jury found appellants owed Intercity for amounts it had expended for overhead, gauger costs and operating expenses. The jury also determined that Intercity was owed the fair rental value of personal property used on the fields. The trial court entered judgment for appellees.

■ Intercity claims in its brief that it was acting as agent for the participating working interest owners. An agent is one who is authorized by another to transact business or manage some affair and to render an accounting of such transaction. *Jorgensen v. Stuart Place Water Supply Corp.,* 676 S.W.2d 191 (Tex.App.—Corpus Christi 1984, no writ). It denotes a consensual relationship between two parties by which one acts on behalf of another subject to the other's control. *Tamburine v. Center Savings Association,* 583 S.W.2d 942 (Tex.Civ.App.—Tyler 1979, no writ). It follows that, as an agent, Intercity may recover only what its principal could recover under the circumstances. During oral argument, Intercity suggested that it was merely a creditor and likened this case to a suit on a sworn account. We note, however, that no contract existed between appellants and Intercity. We do not believe this action is of a character embraced by Tex.R.Civ.P. 185. We hold, therefore, that, if Intercity is to recover, it is as an agent for the participating cotenants.

In *Cox v. Davison,* 397 S.W.2d 200, 201 (Tex.1965), the Supreme Court iterated the Texas rule that a cotenant who produces minerals from common property without having secured the consent of the other cotenants is accountable on the basis of the value of the minerals taken, less the necessary and reasonable cost of producing and marketing the same. The law will imply a contract on the part of one cotenant to reimburse his co-owners for moneys neces-

sarily spent for the benefit of the common estate. *Shaw & Estes v. Texas Consolidated Oils,* 299 S.W.2d 307, 313 (Tex.Civ. App.—Galveston 1957, writ ref'd n.r.e.). The court, in *Shaw,* held that the cotenant, incurring speculative expenses in connection with the exploration and development of oil, gas and mineral properties, is not entitled to a personal judgment against his cotenant for reimbursement, but is entitled to be reimbursed out of production if and when production results. However, a cotenant has the right to be reimbursed proportionately for money necessarily and beneficially spent to improve the property.

■ *Shaw* explains that a cotenant who spends money "necessarily and beneficially" in the interest of the common estate, has the right to be reimbursed proportionately by his associates, and is entitled to a personal judgment and an equitable lien on the cotenant's interest in the common estate. However, in the case of money speculatively spent, a cotenant is entitled to reimbursement *out of the share in actual production.* In *Shaw,* the court said that all expenses necessarily incurred by keeping the leases in production were reimbursable, but expenditures which did not extend the leasehold estate, i.e., the reworking operations which were unsuccessful and resulted only in salt water which neither preserved nor benefitted the estate were not recoverable. If a cotenant drills a dry hole, he does so at his own risk and without the right to reimbursement for the drilling cost. *Willson v. Superior Oil Co.,* 274 S.W.2d 947 (Tex.Civ.App.—Texarkana 1954, writ ref'd n.r.e.).

■ If an operating agreement does not include an express promise by a nonoperator to contribute to the expenses of acquisition, exploration, development and operation costs, the operator is usually not entitled to reimbursement except out of proceeds. An operating company may be entitled to a personal judgment for reimbursement by the nonoperating cotenant for expenditures necessary to preserve the estate.

■ By Neeley and Gilbert's fourth point of error, they claim the trial court

erred in entering judgment against them because some of the invoices upon which the judgment was based were for work performed on nonproducing wells. In their fifth point, they complain that the issue submitted incorrectly states the law concerning the recovery of costs and expenses by cotenants. Appellants argue that a cotenant can only recover costs incurred on producing wells.

The special issue submitted to the jury asked the jury what sum of money was reasonably and necessarily expended by Intercity to pay gauger costs, overhead and operating expenses. The jury made the following findings:

|  | Gauger Costs | Overhead | Operating Expenses |
|---|---|---|---|
| Dyersdale Field | $346.20 | $1038.60 | $3400.52 |
| Welder E & F | $250.70 | $ 752.10 | $5763.19 |
| Slick Wilcox | $386.40 | $1159.20 | $7132.66 |
| Burkitt A–1 | $140.64 | $ 421.93 | $2363.72 |

Neeley and Gilbert objected to the submission of the issue and asked the court to submit the following issue:

> What sum of money, if any, do you find from a preponderance of the evidence has been reasonably and necessarily expended during the period of time of controversy in this suit by Intercity Management to pay for the production and marketing of minerals attributable to the working interest owned by the Defendants in the following fields.

No operating agreement existed between Intercity and Neeley and Gilbert. Don Bodine, vice-president of Intercity, testified that Intercity is an operator of oil and gas properties. Its duties include oil and gas production, conducting field operations and remitting profits to working interest owners. He testified that there were no distinctions made on the summary sheets for charges for producing and non-producing wells. He testified that the Dyersdale and Slick-Wilcox fields have been profitable fields, but that the Welder E & F field was marginal in terms of profit. Expenses were billed for Welder even though it wasn't producing enough to pay for itself. Bodine testified that the money expended trying to reestablish gas production from the Welder E & F was reasonable and necessary even though the efforts were unsuccessful. Bodine testified on cross-examination that there were problems with the Dyersdale field. The Railroad Commission was requiring them to plug or bring back into operation any unplugged wells on the field. There was also testimony that a lease on the Dyersdale field was lost because production was not secured. Bodine testified that his company's policy is to charge overhead on a per-well, per-month basis on producing wells and saltwater disposal wells.

A trial court has considerable discretion in the manner in which it submits special issues. *Wood v. Texas Farmers Insurance Co.*, 593 S.W.2d 777 (Tex.Civ.App.— Corpus Christi 1979, no writ). Here, the issue submitted to the jury asked what sum of money was reasonably and necessarily expended by Intercity to pay gauger costs, overhead and operating expenses. Appellants' requested issue asked for the reasonable and necessary costs expended for production and marketing. We find that the issue, as submitted, allowed the jury to consider expenditures which were not allowed. Appellees were not entitled to recover for speculative efforts to preserve the common estate, if unsuccessful. Appellants properly objected to the issue and were not required to submit an issue in substantially correct form. *See* Tex.R. Civ.P. 279.

The question remaining is whether the issue, as submitted, allows us to render the judgment that the trial court should have rendered. The evidence shows that costs were billed on Welder E & F even though it was not earning enough to pay for itself. The jury found the appellee should recover gauger costs of $250.70, overhead costs of $752.10, and costs of $817.19 on the Welder E & F. We find that these charges were improper. There is nothing in the record from which we are able to determine whether the other costs were proper or improper.

■ Bodine testified that all of the expenses were reasonable and necessary. However, the evidence affirmatively

showed that certain reworking projects failed, and the invoices in question made no distinction between producing and non-producing wells. A lease on the Dyersdale field failed because production was not established. The plaintiff operator has the burden of proving what expenses were reasonable and necessary to preserve the estate. It is clear from the record that some of the expenses appellee claims are recoverable, but we are unable to determine from the record before us which expenses are recoverable and which are not. We therefore remand the case to the trial court. Appellants' fourth and fifth point of error are sustained.

■ Appellants argue in their first point of error that the trial court erred in overruling their plea in abatement because at the time appellee's lawsuit was filed, an identical cause of action was pending in Harris County.

A review of the pleadings shows that the only difference between the two lawsuits is the time period in which Intercity allegedly incurred expenses. The trial court did not err because appellants failed to verify by affidavit that there was another suit by the same parties involving the same claim as they were required to do. Tex.R.Civ.P. 93(3). Appellants' first point of error is overruled. We have addressed all controlling issues in this case and decline to address appellants' other points of error. Tex.R.App.P. 90.

The judgment of the trial court is reversed and remanded.

BENAVIDES, J., not participating.

### OPINION ON MOTION FOR REHEARING

KENNEDY, Justice.

■ Appellee Intercity Management Corporation asks us to affirm that part of the trial court's judgment which was entered upon the stipulations of the parties. Specifically, the parties stipulated that appellants were indebted to Intercity for $5,920.03 for royalties and taxes as well as a stipulated amount for attorney's fees.

Appellate courts, as well as trial courts, must give effect to valid stipulations. *See Geo-Western Petroleum Development, Inc. v. Mitchell,* 717 S.W.2d 734 (Tex.App.—Waco 1986, no writ); *New v. First National Bank of Midland* 476 S.W.2d 121 (Tex.Civ.App.—El Paso 1971, writ ref'd n.r. e.). Appellants assert by response to the Motion for Rehearing that the judgment does not reflect the parties' stipulation. This is correct. The parties to the stipulation were plaintiff, Intercity Management Corporation and defendants, Charlie Neeley and Earl Gilbert. The judgment speaks to the "plaintiffs." The judgment is reformed to reflect that the stipulation is between plaintiff Intercity Management Corporation and Neeley and Gilbert. No point of error was brought concerning Intercity's right to attorney's fees. Therefore, the portion of the judgment stipulating attorney's fees is also affirmed. Otherwise, the judgment of the trial court is reversed and remanded in accordance with our opinion.

BENAVIDES, J., not participating.