In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-09-00032-CR


______________________________




STANLEY DEAN BROWNE, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 124th Judicial District Court


 Gregg County, Texas


Trial Court No. 37153-B




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Chief Justice Morriss



MEMORANDUM OPINION



 Stanley Dean Browne has filed a pro se notice of appeal from his conviction of continuous
sexual abuse. (1) See Tex. Penal Code Ann. § 21.02 (Vernon Supp. 2008). We have now received
the certification of Browne's right of appeal as required by Rule 25.2 of the Texas Rules of Appellate
Procedure. Tex. R. App. P. 25.2. That certification states that this was a plea agreement case and
that Browne has no right of appeal. 

 Unless a certification, showing that a defendant has the right of appeal, is in the record, we
must dismiss the appeal. See Tex. R. App. P. 25.2(d). Because the trial court's certification
affirmatively shows Browne has no right of appeal, and because the record before us does not reflect
that the certification is incorrect, see Dears v. State, 154 S.W.3d 610, 615 (Tex. Crim. App. 2005),
we must dismiss the appeal.







 We dismiss the appeal for want of jurisdiction. 





 Josh R. Morriss, III

 Chief Justice


Date Submitted: February 12, 2009

Date Decided: February 13, 2009


Do Not Publish

 
1. Originally appealed to the Twelfth Court of Appeals, this case was transferred to this Court
by the Texas Supreme Court pursuant to its docket equalization efforts. See Tex. Gov't Code Ann. 

§ 73.001 (Vernon 2005). We are unaware of any conflict between precedent of the Twelfth Court
of Appeals and that of this Court on any relevant issue. See Tex. R. App. P. 41.3.



d
she be transferred to the Pulmonary Hypertension Center at UCH in Denver, Colorado. 
Olivares was airlifted to UCH, arriving February 16, 1999. 

 Olivares remained at UCH for approximately one week. UCH treated Olivares until
her sudden death February 21, 1999. An autopsy revealed she died of complications
associated with a disease of her lungs called primary pulmonary hypertension, but the
autopsy did not reveal which complications occurred and resulted in Olivares' death. 

 After being sued in Texas, the Colorado defendants filed a special appearance
contesting personal jurisdiction. The Colorado defendants asserted they: 1) are not
citizens of the State of Texas; 2) are not licensed to practice medicine in Texas; 3) do not
practice medicine in Texas; 4) do not do business in Texas; 5) own no property, leases,
or investments in Texas; 6) have never paid taxes in Texas; 7) have not committed any tort
in Texas; 8) have not entered into any contracts with Texas residents for the provision of
medical care or treatment or for the referral of patients; and 9) have not appointed any
agent for service of process in Texas and are not required to do so. The Colorado
defendants further contend that the Townsends' causes of action did not arise from or
relate to any contacts with Texas by the Colorado defendants and that the Colorado
defendants did not and do not have continuous or systematic contacts with Texas. After
conducting a hearing on the special appearance, the trial court granted the Colorado
defendants' motion to dismiss pursuant to their special appearance and dismissed all the
Townsends' causes of action for lack of personal jurisdiction.

 In their first point of error, the Townsends contend the trial court erred in dismissing
their case because the Colorado defendants are subject to specific jurisdiction. A
nonresident defendant must negate all bases of personal jurisdiction to prevail in a special
appearance. CSR Ltd. v. Link, 925 S.W.2d 591, 596 (Tex. 1996); LeBlanc v. Kyle, 28
S.W.3d 99, 101 (Tex. App.-Texarkana 2000, pet. denied). Whether a court can assume
personal jurisdiction over a nonresident defendant is a question of law that we review
de novo. BMC Software Belg., N.V. v. Marchand, 45 Tex. Sup. Ct. J. 930, 2002 Tex.
LEXIS 103, at *6 (June 27, 2002); Hotel Partners v. Craig, 993 S.W.2d 116, 120 (Tex.
App.-Dallas 1994, writ denied). We review the trial court's resolution of any underlying
factual questions for factual sufficiency of the evidence. LeBlanc, 29 S.W.2d at 101 n.2. 
We will affirm if we can uphold the trial court's order on any legal theory finding support in
the evidence. See Happy Indus. Corp. v. Am. Specialties, Inc., 983 S.W.2d 844, 847 (Tex.
App.-Corpus Christi 1998, pet. dism'd w.o.j.); see also Cartlidge v. Hernandez, 9 S.W.3d
341, 345 (Tex. App.-Houston [14th Dist.] 1999, no pet.); Transportacion Especial
Autorizada, S.A. de C.V. v. Seguros Comercial Am., S.A. de C.V., 978 S.W.2d 716, 719
(Tex. App.-Austin 1998, no pet.); Fish v. Tandy Corp., 948 S.W.2d 886, 892 (Tex.
App.-Fort Worth 1997, writ denied); Clark v. Noyes, 871 S.W.2d 508, 511-12 (Tex.
App.-Dallas 1994, no writ); NCNB Tex. Nat'l Bank v. Anderson, 812 S.W.2d 441, 445 (Tex.
App.-San Antonio 1991, no writ). 

 When a personal jurisdictional question is reviewed, we review all the evidence. 
See Nikolai v. Strate, 922 S.W.2d 229, 236 (Tex. App.-Fort Worth 1996, writ denied); Hotel
Partners v. KPMG Peat Marwick, 847 S.W.2d 630, 632 (Tex. App.-Dallas 1993, writ
denied). But the review is not a de novo review. The proper standard for reviewing the
evidence in a case involving a challenge to in personam jurisdiction is factual sufficiency. 
See Nikolai, 922 S.W.2d at 236; Hotel Partners, 847 S.W.2d at 632. Thus, we may
reverse the decision of the trial court only if its ruling is so against the great weight and
preponderance of the evidence as to be manifestly erroneous or unjust. See In re King's
Estate, 150 Tex. 662, 244 S.W.2d 660, 661 (1951); Runnells v. Firestone, 746 S.W.2d
845, 849 (Tex. App.-Houston [14th Dist.]), writ denied, 760 S.W.2d 240 (Tex. 1988) (per
curiam). In reviewing such a point of error, we must consider and weigh all of the
evidence, both the evidence that tends to prove the existence of a vital fact as well as
evidence that tends to disprove its existence. See Ames v. Ames, 776 S.W.2d 154,
158-59 (Tex. 1989); Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986). So, considering the
evidence, if a finding is so contrary to the great weight and preponderance of the evidence
as to be manifestly unjust, the point should be sustained, regardless of whether there is
some evidence to support it. Watson v. Prewitt, 159 Tex. 305, 320 S.W.2d 815, 816
(1959); King's Estate, 244 S.W.2d at 661. 

 If evidence supports the implied findings of fact, we must uphold the trial court's
judgment on any legal theory supported by the evidence. See Worford v. Stamper, 801
S.W.2d 108, 109 (Tex. 1990); Point Lookout W., Inc. v. Whorton, 742 S.W.2d 277, 278
(Tex. 1987); Runnells, 746 S.W.2d at 848. This is so regardless of whether the trial court
articulates the correct legal reason for the judgment. See Harrington v. R.R. Comm'n, 375
S.W.2d 892, 895 (Tex. 1964); Marifarms Oil & Gas, Inc. v. Westhoff, 802 S.W.2d 123, 125
(Tex. App.-Fort Worth 1991, no writ). 

 A court may assert personal jurisdiction over a nonresident defendant only if the
requirements of both the Due Process Clause of the Fourteenth Amendment to the United
States Constitution and the Texas long-arm statute are satisfied. U.S. Const. amend. XIV,
§ 1; Tex. Civ. Prac. & Rem. Code Ann. § 17.042 (Vernon 1997); Helicopteros Nacionales
de Colombia, S.A. v. Hall, 466 U.S. 408, 413-14, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984);
CSR Ltd., 925 S.W.2d at 594. The Texas Supreme Court has consistently interpreted the
long-arm statute as reaching "as far as the federal constitutional requirements of due
process will allow." Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.,
815 S.W.2d 223, 226 (Tex. 1991). 

 Under the Due Process Clause, a defendant must have certain minimum contacts
with the forum such that maintaining suit there will not offend "traditional notions of fair play
and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154,
90 L.Ed. 95 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed.
278 (1940)). A nonresident defendant that has purposefully availed itself of the privileges
and benefits of conducting business in the foreign jurisdiction has sufficient contacts with
the forum to confer personal jurisdiction. Burger King Corp. v. Rudzewicz, 471 U.S. 462,
475-76, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). However, a defendant should not be
subject to the jurisdiction of a foreign court based on "random," "fortuitous," or "attenuated"
contacts. Id., 471 U.S. at 475.

 The Texas Supreme Court has articulated a three-pronged formula to ensure
compliance with the federal standard: 1) there must be a "substantial connection" between
the nonresident defendant and Texas arising from action or conduct of the nonresident
defendant purposefully directed toward Texas; 2) the cause of action must arise out of or
relate to the defendant's contacts with Texas (specific jurisdiction), or if not, the defendant's
contacts with Texas must be continuing and systematic (general jurisdiction); and 3)
assumption of jurisdiction must not offend traditional notions of fair play and substantial
justice. In re S.A.V., 837 S.W.2d 80, 85 (Tex. 1992). Neither the Texas formula nor any
other test for personal jurisdiction should be applied mechanically. Schlobohm v. Schapiro,
784 S.W.2d 355, 358 (Tex. 1990). 

 In determining the latter prong of the Texas formulation, due consideration should
be given to: 1) the burden on the defendant; 2) the interests of the forum state in
adjudicating the dispute; 3) the plaintiff's interest in obtaining convenient and effective
relief; 4) the interstate judicial system's interest in obtaining the most efficient resolution of
controversies; and 5) the shared interest of the several states in furthering fundamental 
substantive social policies. World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286,
292, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980); Guardian Royal Exch. Assurance, Ltd., 815
S.W.2d at 228. 

 Specific jurisdiction is established if the defendant's alleged liability arises from or
is related to an activity conducted within the forum. CSR Ltd., 925 S.W.2d at 595. The
Townsends contend Weill was an agent of the Colorado defendants because he formerly
practiced at UCH. The Colorado defendants all practiced in Colorado, none owned
property or paid taxes in Texas, none were licensed to practice medicine in Texas, none
advertised services in any Texas newspaper, magazine, telephone book, or other print
media, or on any Texas radio or television network. All patients seeking treatment from the
Colorado defendants traveled to Colorado; none of the Colorado defendants traveled to
Texas or any other state to render care. All of the care received by Olivares by the
Colorado defendants occurred in Colorado. Olivares was not enrolled in any research
study being performed by UCH or UCHSC; the Colorado Multi-Institutional Board had no
contact with Olivares or her family before, during, or after her treatment at UCH; none of
the Colorado doctors had any contact with Olivares before her admission to UCH; the
decision to transfer Olivares to UCH was Weill's independent decision made after
consulting with Olivares and other Texas physicians; and no one at UCH or UCHSC
encouraged or influenced Weill to transfer Olivares to Colorado. Most of the Colorado
doctors do not know Weill. Badesch and Voelkel know Weill, but stated in their affidavits
they did not solicit Weill for the transfer of Olivares. None of the Colorado doctors
contracted with Weill or any other Texas doctor or hospital for the referral of Texas
patients. The Colorado defendants' only contact with Texas was that Olivares lived in
Texas and her body was returned to Texas after her death in Colorado. Out-of-state
doctors should not be subject to jurisdiction simply because the patient who receives
treatment at their office happens to reside and work in Texas. Oden v. Marrs, 880 S.W.2d
451, 457 (Tex. App.-Texarkana 1994, no writ); see Wright v. Yackley, 459 F.2d 287,
289-90 (9th Cir. 1972); Clark v. Noyes, 871 S.W.2d 508, 515-16 (Tex. App.-Dallas 1994,
no writ) (refusing to exercise jurisdiction when nonresident patient sought treatment in
doctor's home state). Specific jurisdiction over the Colorado defendants does not arise
merely because they treated a Texas resident in their home state.

 The Townsends contend the Colorado defendants purposefully recruited Olivares
to enter their program and acted through their Texas agent to do so, thereby creating the
actions and conduct in Texas necessary to exercise specific jurisdiction. The Colorado
defendants' evidence is unequivocal: Weill is not their agent. Weill's affidavit states that
he was not solicited by anyone at UCH or UCHSC to transfer any patient, including
Olivares, and that no doctor or staff person at UCH or UCHSC ever solicited him or
contracted with him for patient referrals. Weill also stated he never sought or received any
kind of payment for the transfer of Olivares to UCH. 

 We cannot presume an agency relationship exists. Gutierrez v. Deloitte & Touche,
No. 04-01-00637-CV, 2002 Tex. App. LEXIS 2195, at *18 (Tex. App.-San Antonio Mar. 27,
2002, no pet. h.); Johnson v. Owens, 629 S.W.2d 873, 875 (Tex. App.-Fort Worth 1982,
writ ref'd n.r.e.). An agency relationship may be found from underlying facts or direct and
circumstantial evidence showing the relationship of the parties. Elite Towing, Inc. v. LSI
Fin. Group, 985 S.W.2d 635, 643 (Tex. App.-Austin 1999, no pet.). An "agent" is one who
is authorized by a person or entity to transact business or manage some affair for the
person or entity. Neeley v. Intercity Mgmt. Corp., 732 S.W.2d 644, 646 (Tex. App.-Corpus
Christi 1987, no writ). An essential element of the principal-agent relationship is the
alleged principal's right to control the actions of the alleged agent. Sendjar v. Gonzalez,
520 S.W.2d 478, 481 (Tex. Civ. App.-San Antonio 1975, no writ). This right includes not
only the right to assign tasks, but also the right to dictate the means and details of the
process by which an agent will accomplish the task. Johnson, 629 S.W.2d at 875. The
evidence clearly shows Weill was not an agent of any of the Colorado defendants. 
Although at one time he may have been a resident at UCH, the evidence is uncontroverted
that, at the time he referred Olivares to UCH, he worked at a hospital in Dallas, Texas, and
received no orders or money from any of the Colorado defendants. The evidence is
factually sufficient to support the trial court's implied finding that Weill was not an agent of
any of the Colorado defendants. 

 Because there is no "substantial connection" between the Colorado defendants and
Texas arising from action or conduct of the Colorado defendants purposefully directed
toward Texas, we overrule the Townsends' first point of error. See S.A.V., 837 S.W.2d
at 85.

 In their second point of error, the Townsends contend the trial court erred in finding
it lacked personal jurisdiction over the Colorado defendants. The Townsends contend the 
Colorado defendants advertised their program and services over the internet, thereby
granting Texas general jurisdiction. Under general jurisdiction standards, the cause of
action need not arise from or relate to the activities conducted within the forum state by the
nonresident defendant. CSR Ltd., 925 S.W.2d at 595. In such cases, however, the
minimum contacts analysis becomes more demanding; the contacts must be "substantial."
Id.; Guardian Royal Exch. Assurance, Ltd., 815 S.W.2d at 228. When general jurisdiction
is alleged, there must be "continuous and systematic contacts" between the nonresident
defendant and Texas. CSR Ltd., 925 S.W.2d at 595; Guardian Royal Exch. Assurance,
Ltd., 815 S.W.2d at 228.

 Internet use is characterized as falling within three categories, on a sliding scale, for
purposes of establishing personal jurisdiction. Michel v. Rocket Eng'g Corp., 45 S.W.3d
658, 677 (Tex. App.-Fort Worth 2001, no pet.); Jones v. Beech Aircraft Corp., 995 S.W.2d
767, 772 (Tex. App.-San Antonio 1999, pet. dism'd w.o.j.), overruled on other grounds,
BMC Software Belg., N.V. v. Marchand, 45 Tex. Sup. Ct. J. 930, 2002 Tex. LEXIS 103,
(June 27, 2002); see also Mink v. AAAA Dev. LLC, 190 F.3d 333, 336 (5th Cir. 1999). At
one end of the scale are websites clearly used for transacting business over the internet,
such as entering into contracts and knowing and repeated transmission of files of
information, which may suffice to establish minimum contacts within a state. Jones, 995
S.W.2d at 772. At the other end are "passive" websites, used only for advertising over the
internet, which are not sufficient to establish minimum contacts, even though they are
accessible to residents of a particular state. In the middle are "interactive" websites, which
allow "exchange" of information between a potential customer and the host computer. 
Jones, 995 S.W.2d at 772-73. Jurisdiction in cases involving interactive websites must be
determined by the degree of interactivity. Jones, 995 S.W.2d at 773. The evidence shows
none of the Colorado doctors independently advertised their services on the internet. UCH
and UCHSC maintain a website but contend it is passive and for informational purposes
only. There is nothing in the evidence provided to indicate that any of the Colorado
defendants transacted business or entered into contracts via the internet or the website. 
The evidence on which the Townsends rely merely shows that each of the doctors may be
found on the internet and that UCH maintains an informative website. Having contact
information and product information alone on the internet is not sufficient to grant
jurisdiction in Texas. Mink, 190 F.3d at 336. There is no evidence any of the Colorado
defendants conducted business over the internet. The evidence is factually sufficient to
support the trial court's finding that none of the Colorado defendants were conducting
business in Texas. The Townsends' second point of error is overuled.

 We affirm the judgment.


 Donald R. Ross

 Justice

Date Submitted: July 12, 2002

Date Decided: August 13, 2002


Publish