ACCEPTED
04-14-00889-CV
FOURTH COURT OF APPEALS
SAN ANTONIO, TEXAS
3/9/2015 3:38:26 PM
KEITH HOTTLE
CLERK

# IN THE
# FOURTH COURT OF APPEALS
# AT SAN ANTONIO

FILED IN
4th COURT OF APPEALS
SAN ANTONIO, TEXAS
03/9/2015 3:38:26 PM
KEITH E. HOTTLE
Clerk

## CAUSE NO. 04-14-00889-CV

## ENDURA ADVISORY GROUP, LTD.,
## APPELLANT

## VS.

## DOMINIC ALTOMARE,
## APPELLEE

## INTERLOCUTORY APPEAL FROM CAUSE NO. 2014-CI-11780
## IN THE 131ST JUDICIAL DISTRICT COURT, BEXAR COUNTY, TEXAS
## MOTION HEARD BY JUDGE MARTHA TANNER, VISITING JUDGE,
## SITTING IN THE 57TH JUDICIAL DISTRICT COURT

## APPELLANT, ENDURA ADVISORY GROUP, LTD.'S, REPLY BRIEF

RICHIE & GUERINGER, P.C.

GAY GUERINGER
State Bar No. 08571400
DOUG K. CLEMONS
State Bar No. 24032083
112 East Pecan Street, Suite 1420
San Antonio, Texas 78205
Tel: 210-220-1080 / Fax: 210-220-1088
Email: ggueringer@rg-sanantonio.com
Email: dclemons@rg-sanantonio.com
ATTORNEYS FOR APPELLANT,
ENDURA ADVISORY GROUP, LTD.

## APPELLANT REQUESTS ORAL ARGUMENT

# TABLE OF CONTENTS

TABLE OF CONTENTS...................................................................................... i

INDEX OF AUTHORITIES................................................................................ ii

REPLY ............................................................................................................1

PRAYER ........................................................................................................8

CERTIFICATE OF COMPLIANCE..................................................................9

CERTIFICATE OF SERVICE ........................................................................9

# INDEX OF AUTHORITIES

**Cases**

*Gutierrez v. Deloitte & Touche*, 100 S.W.3d 261, 271 (Tex. App. – San Antonio 2002, no pet.) ...................................................................................................2

*Houston Exploration Co. v. Wellington Underwriting Agencies, Ltd.*, 352 S.W.3d 462, 469 (Tex. 2011) ...............................................................................6

*In re B.P. Am. Prod. Co.*, 97 S.W.3d 366, 370 (Tex. App. – Houston [14th Dist.] 2003, orig. proceeding)..................................................................................5, 7

*Neely v. Intercity Mgmt. Corp.*, 732 S.W.2d 644, 646 (Tex. App. – Corpus Christi 1987, no writ) ...............................................................................................4

*Sendjar v. Gonzales*, 520 S.W.2d 478, 481 (Tex. Civ. App. – San Antonio 1975, no writ) ...............................................................................................................4, 5

**ENDURA ADVISORY GROUP, LTD.,**
**APPELLANT**

**VS.**

**DOMINIC ALTOMARE,**
**APPELLEE**

**INTERLOCUTORY APPEAL FROM CAUSE NO. 2014-CI-11780**
**IN THE 131ST JUDICIAL DISTRICT COURT, BEXAR COUNTY, TEXAS**
**MOTION HEARD BY JUDGE MARTHA TANNER, VISITING JUDGE,**
**SITTING IN THE 57TH JUDICIAL DISTRICT COURT**

**APPELLANT, ENDURA ADVISORY GROUP, LTD.'S, REPLY BRIEF**

TO THE HONORABLE FOURTH COURT OF APPEALS:

COMES NOW Appellant, ENDURA ADVISORY GROUP, LTD., and files its

Reply Brief, and in support thereof would show the Court the following:

## REPLY

1.    Appellee has failed to overcome the mountain of evidence that Josh

Reneau ("**Reneau**") is Endura Advisory Group, Ltd.'s ("**Endura**") agent and

representative.  James G. Lundblad ("**Lundblad**"), a principal of Endura, testified

unequivocally Reneau is an agent and representative of Endura.  (Nov. R.R. Pg. 13,

line 14-18).  Lundblad also testified that Reneau has business cards with Endura's

name on them and when Reneau is out in the field leasing and selling properties for

Endura, he represents himself to the public as working for Endura. (Nov. R.R. Pg. 13, line 19-21). Reneau also has the authority to enter into transactions on behalf of Endura and actively markets on behalf of Endura. (Nov. R.R. Pg. 19, line 16-25). Further evidencing agency and control, Lundblad testified to the following points: (a) Reneau does not work for anyone other than Endura; (b) Reneau is required to come to the office; (c) Reneau is required to attend sales meetings; (d) Reneau is authorized by Endura to market and attempt to acquire listings and properties to sell and lease for and on behalf of Endura; (e) Endura instructs Reneau on how to manage and practice business for Endura and work within the confines of what Endura expects from an Associate, and (f) Endura assigns Reneau tasks as it relates to selling and leasing properties for Endura. (Nov. R.R. Pg. 15, line 22 through Pg. line 22; Nov. R.R. Pg. 22, line 4-7; Nov. R.R. Pg. 20, line 1-11). In viewing the facts and circumstances as a whole, the relationship between Endura and Reneau is obviously one of principal and agent. *See Gutierrez v. Deloitte & Touche*, 100 S.W.3d 261, 271 (Tex. App. – San Antonio 2002, no pet.)(An agency relationship may be found from underlying facts or direct circumstantial evidence showing the relationship of the parties).

2.      Appellee mischaracterizes the Listing Agreement.  The Listing Agreement clearly establishes Reneau as an agent and representative of Endura. *See* previously filed Appendix, Confidential Exhibit 5, Listing Agreement. In an ill

fated attempt to show this Court that Reneau is an independent contractor instead of an agent or representative of Endura, Appellee, Nick Altmore ("**Altomare**") cites the Court to the Listing Agreement admitted into evidence at the November 7, 2014 hearing. *See* Appendix, Confidential Exhibit 5, Listing Agreement; *see also* Appellee Brief at Pg. 15. Altomare points out that Section 4.3 of the Listing Agreement states that the Broker is acting as an independent contractor and not the Owner's agent; however, this section refers to the relationship between Endura (as the Broker) and the Owner (as the property owner, Star 7 Properties, LLC, Endura's client). *See* Appendix, Confidential Exhibit 5, Listing Agreement, Section 4.3. This section has absolutely nothing to do with the relationship between Reneau and Endura and therefore Altomare's argument has no merit.

      3.      What is telling however, is that the same Listing Agreement, under Section 4.1 states:

> 4.1  **<u>Key Agents.</u>**  If there are any Key Agents designated in Paragraph 1.8, then Broker [Endura] **<u>shall assign</u> those Key Agents** [Reneau] **to be primarily <u>responsible for performing the duties of Broker</u>** hereunder during the entire term.

(Appendix, Confidential Exhibit 5, Listing Agreement, Pg. 3, Section 4.1. (Emphasis added)

As per Section 4.1 of the Listing Agreement Endura unequivocally assigned Reneau, as Key Agent for Endura under the Listing Agreement, the responsibility of performing the duties of Endura when dealing with property owner or client.

This clearly demonstrates that Endura, by naming Reneau as Key Agent, has the right to and does exercise control over Reneau, and delegates the responsibility to Reneau to perform Endura's duties; not an open invitation to do whatever he wants. In fact, Section 4.1 of the Listing Agreement directs Reneau to act on behalf of Endura when dealing with the property owner. *See Neely v. Intercity Mgmt. Corp.*, 732 S.W.2d 644, 646 (Tex. App. – Corpus Christi 1987, no writ)(An "agent" is one who is authorized by a person or entity to transact business or manage some affair for the person or entity); *Sendjar v. Gonzales*, 520 S.W.2d 478, 481 (Tex. Civ. App. – San Antonio 1975, no writ)(An essential element of the principal-agency relationship is the principal's right to control the actions of the alleged agent). The Listing Agreement is proof positive that Endura has the right to control the actions of Reneau and Reneau is authorized by Endura to transact business and manage Endura's affairs as it relates to the selling or leasing of properties, making Reneau an agent and representative of Endura.

4.     A thorough review of Reneau's Associate Compensation Agreement further reveals that it controls Reneau by and through specific requirements for Reneau to receive additional compensation on clients and/or deals he works on for Endura, further evidencing control by Endura over the means and details of Reneau's work. *Id.* at page JR000011-JR000012, Article II and Article III of the Associate Compensation Agreement. Specifically, Article II and Article III of the

Associate Compensation Agreement sets forth specific criteria Reneau must satisfy in order to receive additional compensation or referral commissions. *Id.* For instance, in order for Reneau to receive an additional referral fee under Article III, one of the criteria that must be met by Reneau is "an ability to demonstrate continuing involvement and communication with client." Thus, the criteria set forth in Article II and Article III of the Associate Compensation Agreement undeniably evidences Endura's established criteria its Associates must meet to achieve additional fees. *See Sendjar v. Gonzales*, 520 S.W.2d at 481. So, while Endura may not choose to micromanage every aspect of how an Associate gets there (although it could do so), it absolutely imposes controls through criteria and requirements necessary for financial advancement.

5.     The claims brought by Altomare against Reneau undoubtedly arise from the Separation Agreement. To be subject to arbitration, the "allegations need only be factually intertwined with arbitrable claims or otherwise touch upon the subject matter of the agreement containing the arbitration provision. *In re B.P. Am. Prod. Co*., 97 S.W.3d 366, 370 (Tex. App. – Houston [14th Dist.] 2003, orig. proceeding). Altomare has asserted claims against Reneau for breach of contract based on an unwritten "agreement" to split "certain" undefined, unquantified

commissions on real estate transactions the two worked on together.[1] Even assuming this "agreement" to split "certain" commissions once existed through a course of dealing, Altomare released these claims when he executed the Separation Agreement with Endura because Altomare did not include these transactions on the List. Further, by and through the qualification of "certain" commissions, Altomare raises the ambiguity of this undefined "agreement" entitling Endura's principal, Lundblad, to explain the reasons behind the breadth of terms used in the Separation Agreement. (Nov. R.R. Pg. 17, line 14-25). An explanation of the intent of the parties which does not contradict the document is exactly what the parol evidence rule is there for. *Houston Exploration Co. v. Wellington Underwriting Agencies, Ltd.*, 352 S.W.3d 462, 469 (Tex. 2011)(The parol evidence rule does not prohibit consideration of surrounding circumstances that inform, rather than vary from or contradict, the contract text). Further, Altomare failed to object to Lundblad's testimony and he waived any right to now complain about it.

6. By asserting claims for breach of contract against Reneau, Altomare is effectively asserting these claims against Endura because Reneau is Endura's agent and representative and was released by the execution of the Separation Agreement. Furthermore, the claims brought by Endura against Altomare are for breach of the Separation Agreement and are undisputedly covered by the arbitration agreement

---

[1] We know of only four (4) so far, but Altomare has not limited his right to continue to claim future commissions on the same "agreement."

contained within the Separation Agreement. (C.R. Pg. 9-17). Accordingly, Altomare's claims against Reneau and Endura's claims against Altomare arise from and touch upon the very subject matter of the Separation Agreement and therefore triggers the Dispute Resolution Policy incorporated into the Separation Agreement. *See Id*. at 370.

7.      For the reasons stated in Endura's Brief and herein, Altomare has failed to overcome the overwhelming evidence that Reneau's work selling and leasing properties and securing listing agreements for Endura is all performed as an agent or representative of Endura and only Endura. As stated by the Texas Supreme Court in the *In re D. Wilson Constr. Co* case, "a court should not deny arbitration unless it can be said with positive assurance that an arbitration clause is not susceptible of an interpretation which would cover the dispute at issue". *In re D. Wilson Const. Co.*, 196 S.W.3d 774, 783 (Tex. 2006). With this liberal construction in mind, it is clear from the evidence presented to the trial court that Reneau is an agent or representative of Endura and the disputes are covered by the Separation Agreement, thus triggering the arbitration agreement. Therefore, the trial court erred in denying Endura's Motion to Compel Alternative Dispute Resolution Process and Motion to Abate Proceeding Pending Completion of the Alternative Dispute Resolution Process and denial of same on Motion for Reconsideration.

**<u>PRAYER</u>**

This Court should reverse the trial court's denial of Endura Advisory Group, Ltd.'s Motion to Compel Alternative Dispute Resolution Process and Motion to Abate Proceeding Pending Completion of the Alternative Dispute Resolution Process and denial of same on Motion for Reconsideration and remand this case back to the trial court to compel arbitration and for such other and further relief, whether at law or in equity, to which Endura Advisory Group, Ltd, may be justly entitled.

Respectfully submitted,

RICHIE & GUERINGER, P.C.

BY: */s/ Gay Gueringer*
    GAY GUERINGER
    State Bar No. 08571400
    DOUG K. CLEMONS
    State Bar No. 24032083
    112 East Pecan Street, Suite 1420
    San Antonio, Texas 78205
    Telephone: 210-220-1080
    Facsimile: 210-220-1088
    Email: ggueringer@rg-sanantonio.com
    Email: dclemons@rg-sanantonio.com
ATTORNEYS FOR INTERVENOR,
ENDURA ADVISORY GROUP, LTD.

## CERTIFICATE OF COMPLIANCE

Pursuant to Texas Rule of Appellate Procedure 9.4(i)(3), I hereby certify that this reply brief contains 1,605 words, excluding the words not included in the word count pursuant to Texas Rule of Appellate Procedure 9.4(i)(1). This is a computer-generated document created in Microsoft Word, using 14-point typeface for all text, except for footnotes which are in 12-point typeface. In making this certificate of compliance, I am relying on the word count provided by the software used to prepare the document.

*/s/ Gay Gueringer*
Gay Gueringer/Doug K. Clemons

## CERTIFICATE OF SERVICE

This is to certify that on the 9th day of March 2015, a true and correct copy of the foregoing has been served on opposing counsel as follows:

**Via Electronic Service and Facsimile**
Eric A. Pullen
Pulman, Cappuccio, Pullen, Benson & Jones, LLP
2161 NW Military Highway, Suite 400
San Antonio, Texas 78213

*/s/ Gay Gueringer*
Gay Gueringer/Doug K. Clemons